IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MUSTAFA-EL K.A. AJALA f.k.a Dennis E. Jones-El,

       Plaintiff,

   v.                                          Case No. 13-cv-546-bbc

KELLI WEST, RICK RAEMISCH, TODD OVERBO,
PETER HUIBREGTSE and GARY BOUGHTON,

       Defendants.

BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The plaintiff, Dennis Jones-El, is an inmate housed at the Wisconsin Secure Program Facility (WSPF). He professes to be an adherent of the Islamic faith. Jones-El is challenging a policy that prevents inmates at WSPF from wearing religious headgear outside of their cells. He would like to wear his Islamic kufi cap in all areas of the institution. For the reasons explained below, the defendants are entitled to summary judgment and dismissal of this action.

**ISSUE PRESENTED**

1.    Under the Religious Land Use and Institutionalized Persons Act (RLUIPA), a policy that restricts an inmate's religious practice is valid if it is the least restrictive means of advancing compelling penological interests. Courts give deference to prison officials making these determinations. WSPF's policy prohibiting inmates from wearing religious headgear outside their cell advances safety and security by limiting gang activities, violent confrontations, and the flow of contraband. Does this policy withstand scrutiny under RLUIPA?

2.    A policy that restricts an inmate's religious practice survives scrutiny under the First Amendment free exercise clause if it is reasonably related to legitimate penological needs—a more deferential standard than under RLUIPA. WSPF's policy prohibiting inmates from wearing religious headgear outside their cell advances safety and security by limiting gang

activities, violent confrontations, and the flow of contraband. These justifications are sufficient to withstand scrutiny under RLUIPA. Is the policy constitutional under the free exercise clause?

3.     To implicate the First Amendment establishment clause and Fourteenth Amendment equal protection clause, a policy must single out particular religions for special treatment without a secular reason. WSPF's policy prohibiting inmates from wearing religious headgear outside their cell applies to all religions; its purpose is to limit gang activities, violent confrontations, and the flow of contraband. Is the policy constitutional under the establishment and equal protection clauses?

4.     Under 42 U.S.C. § 1997e(e), inmates may not recover compensatory damages without a prior showing of physical injury. Punitive damages are only awarded where there is evidence of evil motive or intent to harm. Jones-El's only injury in this case is not being allowed to wear his kufi outside his cell—a policy the defendants enforce to preserve prison safety and security. Should any claims for compensatory and punitive damages be dismissed?

5.     Government officials have qualified immunity from suits for damages when their actions do not violate a clearly established constitutional right. To be clearly established, existing precedent must have placed the constitutional question beyond debate. No controlling case law has held that inmates have a constitutional right to wear religious headgear outside of their cells. Are the defendants entitled to qualified immunity?

## STATEMENT OF THE CASE

Plaintiff Dennis Jones-El, a/k/a/ Mustafa-El K.A. Ajala,[1] is an inmate in the Wisconsin correctional system. Jones-El has been confined at the WSPF since 2007 (Complaint, Dkt. #2, p. 2, ¶ 4). In an Order dated August 12, 2013, the Court severed the plaintiff's complaint into four (4) separate lawsuits, in accordance with the joinder provisions of Fed. R. Civ. P. 20 and 21 (*see,* Order, 8-12-13, Dkt. #1). The Court then proceeded to screen the claims set forth in this action (Order, 10-25-13, Dkt. #3). Jones-El was granted Jones-El leave to proceed on his claims

---

[1] Because plaintiff has not legally changed his name, and to be more consistent with DOC policy on inmate name changes and the DOC documentation pertaining to plaintiff, he will be referred to hereafter as "Jones-El."

that WSPF's policy prohibiting him from wearing a kufi cap outside his cell and the chapel violated RLUPIA, the free exercise clause, the establishment clause, and the equal protection clause (*id.*).

The defendants now move for summary judgment on Jones-El's claims.  This brief is submitted in support of their motion.

## STANDARD OF REVIEW

Under Federal Rules of Civil Procedures 56(c), summary judgment "shall be rendered forthwith if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The opposing party "may not rest upon the mere allegations or denials" in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e). Also, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corporation,* 475 U.S. 574, 586 (1986). "[A] party must produce specific facts showing that there remains a genuine issue for trial and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Company*, 853 F.2d 768, 771-72 (10th Cir. 1988). In order for a party "to avoid summary judgment that party must supply evidence sufficient to allow a jury to render a verdict in his favor." *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995).

Presenting only a scintilla of evidence is not sufficient to oppose a motion for summary judgment. *Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir. 1994). And more than mere conclusory

allegations are required to defeat a motion for summary judgment.  *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 840 (7th Cir. 1996).

## ARGUMENT

**I.      WSPF'S POLICY PROHIBITING INMATES FROM WEARING RELIGIOUS HEADGEAR OUTSIDE THEIR CELL AND CHAPEL WITHSTANDS SCRUTINY UNDER RLUIPA.**

### A.      Overview of law.

Inmates alleging that government officials have impeded their ability to practice their religious beliefs have two means of recourse: the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, and the free exercise clause of the First Amendment. RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." *Cutter v. Wilkinson,* 544 U.S. 709, 714-15 (2005).  The protections afforded by RLUIPA apply where:

> (1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or

> (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.

42 U.S.C. § 2000cc-1(b). There is no dispute that RLUIPA applies to DOC.

To prove a RLUIPA claim, an inmate bears the burden of establishing that the defendants placed a substantial burden on the exercise of his religious beliefs. 42 U.S.C. § 2000cc-2(b); *Hernandez v. Commissioner,* 490 U.S. 680, 699 (1989). Although RLUIPA does not define the term "substantial burden," the Seventh Circuit has held that a substantial burden is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago,*

342 F.3d 752, 761 (7th Cir. 2003). This was emphasized by the Supreme Court when it explained that RLUIPA seeks to alleviate only "exceptional government-created burdens on private religious exercise." *Cutter,* 544 U.S. at 720. Under the statute, a "religious exercise" is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

Under RLUIPA, once a prisoner has shown that the actions of government officials have significantly burdened the exercise of his religious beliefs, the burden shifts to the defendants to demonstrate that their decision was the least restrictive means of furthering a compelling government interest. *Cutter,* 544 U.S. at 712. If they can do so, the RLUIPA claim fails.

### B.   There is no evidence to support that the defendants imposed a substantial burden on Jones-El's religious practice.

As was noted above, Jones-El bears the burden on proving that the defendants' actions substantially burdened his exercise of Islam.  42 U.S.C. § 2000cc-1(b)(1).  To do so, Jones-El must provide sufficient evidence that the defendants' actions denying segregated inmates congregate religious services rendered his "religious exercise ... effectively impracticable." *Civil Liberties,* 342 F.3d at 761.  In this case, in no way did the defendants' actions cause the exercise of the plaintiff's religion to be effectively impracticable.

It is undisputed that inmates at WSPF may wear their religious headgear in their cells and during congregate religious services in the chapel (DFOF ¶¶ 34-36). For inmates in segregation like Jones-El, this means he can wear his kufi *almost* the entire time, since he is in his cell except when escorted by staff to recreation or other limited out-of-cell activity (*see,* DFOF ¶¶ 26-33). When he is released from segregation, he will also be able to wear his kufi in the chapel during group Islamic activities (DFOF ¶ 36). Jones-El may  also exercise his Islamic religious beliefs and practices through: (1) religious diet requests; (2) individual study; (3) personal meditation;

(4) utilization of religious books and/or property; (5) correspondence with fellow believers; and (6) pastoral visits (DFOF ¶ 12). Given these available resources, it is implausible the Jones-El's Islamic practice is rendered effectively impracticable.

Even though Jones-El may argue that his Muslim beliefs are substantially burdened, an inmate's "unreasoned say-so" in insufficient to prove a substantial burden on their religious exercise. *Jackson v. Frank*, 439 F.3d 388, 391 (7th Cir. 2006); *Borzych v. Frank*, 439 F.3d 388, 391 (7th Cir. 2006); *Kaufman,* 419 F.3d at 682-83. An inmate must present objective evidence to support such assertions. *Id.* Given all the avenues available to Jones-El to practice his Islamic faith, there is no dispute that WSPF's policy allowing him to wear his kufi only while in his cell or chapel does not render his religious exercise effectively impracticable. Hence, the defendants are entitled to summary judgment on this RLUIPA claim.

### C. WSPF's policy prohibiting inmates from wearing religious headgear outside their cell and chapel is the least restrictive means of advancing compelling penological interests.

Under RLUIPA, once a prisoner has shown that the actions of government officials have substantially burdened the exercise of his religious beliefs, the burden shifts to the defendants to demonstrate that their decision was the least restrictive means of furthering a compelling government interest. *Cutter,* 544 U.S. at 712. In weighing the governmental interests involved, the United States Supreme Court has urged deference to prison administrators. *Id.* at 722-723. Indeed, when applying RLUIPA, "context matters in the application of that standard." *Id.* at 722. As the Court affirmed,

> [w]e do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests.

Id. at 722. "It bears repetition," Justice Ginsberg wrote, "that prison security is a compelling state

interest, and that deference is due to institutional officials' expertise in this area." Id. at 725, n.13. And lawmakers supporting RLUIPA anticipated that

> courts would apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security, and discipline, consistent with consideration of costs and limited resources.'

Id. at 722, citing Joint Statement S7775 (quoting S.Rep. No. 103-111, at 10, U.S. Code Cong. & Admin. News 1993, pp 1892, 1899, 1900).

In this case, Jones-El seeks injunctive relief under RLUIPA to allow inmates "to wear their Kufis outside their cells and other than just in the prison chapel" (*see,* Complaint, Dkt. #2, p. 25, ¶ ii). However, the record does not support this type of relief, as it would compromise the safety and security prison inmates and staff. A prison has a compelling interest in maintaining security, *see Borzych,* 439 F.3d at 391, and courts must give due deference to the judgment and expertise of prison administrators when analyzing whether a regulation is necessary to further that interest. *See Cutter,* 544 U.S. at 723.

It is undisputed that the restrictions on the wearing of religious headgear limits the ability of inmates to uniquely identify themselves, either individually or in groups, and that WSPF must prevent this because any uniqueness that occurs in the facility attracts attention on the part gang members (DFOF ¶¶ 37-40). Kufi caps are not the only type of religious headgear permitted for inmates—Muslim inmates may also utilize a turban or kufiyya, and Jewish inmates may utilize a yarmulke (*see,* DFOF ¶¶ 22-23, 45, 71). Gangs are constantly seeking some way to stand out in the inmate population (DFOF ¶ 39. Inmates in DOC correctional institutions are known to utilize religious items as identifiers for purposes other than religion, such as gang involvement, and unauthorized gangs have been known to usurp religious items as indicia of membership (DFOF ¶¶ 43-44, 47). DOC's restrictions on the wearing of religious headgear reduces self-identification

through religious headwear, stifles open display of affiliation, and curbs these types of gang activities (DFOF ¶¶ 37-49). This is of special concern for the Islamic URG because it has various types of permissible religious headgear, which would allow for different gangs to signify themselves uniquely within the Islamic URG (DFOF ¶ 45).

Kufis and other types of religious headgear could also be used to conceal drugs, weapons, or other forms of contraband that an inmate may want to transport throughout the institution (DFOF ¶ 50). These concerns are heightened during visits with family and friends—a common avenue for inmates to receive contraband (DFOF ¶¶ 659-61).[2] They are also heightened for segregated inmates such as Jones-El that are in a closed environment, always closely escorted by staff, and had have repeatedly exhibits problematic behaviors even with small items of contraband (DFOF ¶ 64). Repeatedly searching and monitoring an inmate's headgear as he travels throughout the institution would burden prison staff and direct their attention away from other security-related duties (DFOF ¶ 51). Some inmate are sensitive about staff touching and/or

---

[2] For these reasons, no hats or headwear are permitted at WSPF during visits (DFOF ¶ 59). This is a neutral rule of general applicability. Rules that apply to everyone without regard to a particular religion do not violate the constitution. *Employment Division Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 887 (1990); *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008) ("*Unlike cases arising under the Free Exercise Clause of the First Amendment*, this prohibition [on imposing substantial religious burdens] applies even where the burden on the prisoner results from a rule of general applicability.") (emphasis added and internal quotations omitted). Where prison policies are neutral and general in application, the state may enforce them without violating the First Amendment. *Schlemm v. Frank*, 2014 WL 2591879, *14 (W.D. Wis.  2014). Courts in other circuits have similarly continued to apply the "generally applicable" principles set forth in *Smith* to inmate First Amendment claims, despite a determination that the *Turner / O'Lone* "reasonably-related" standard also applies. *See, Hines v. South Carolina Dept. of Corrs.,* 148 F.3d 353, 357 (4th Cir. 1998); *Young v. Saunders*, 34 F. App'x 925, 926 (4th Cir. 2002); *Braithwaite v. Hinkle*, 752 F. Supp. 2d 692, 697 (E.D. Va. 2010); *Motto v. Rider*, 2008 WL 4224814 (S.D. W. Va. 2008); *Gresham v. Granholm*, 2009 WL 497666 (W.D. Mich. 2009); *McKinnedy v. Kee-Lippe*, 2012 WL 848283 (D. S.C. 2012).

searching religious property items, which could create added tensions with staff and increase the risk of disturbance (DFOF ¶ 56).

Non-religious inmates or inmates from differing faith groups may take offense to being exposed to symbolisms of another religion in common areas of the institution (DFOF ¶ 57).  For example, Jewish inmates wearing a yarmulke would draw attention to themselves and their religious beliefs, which could cause a disruption when around anti-Semitic inmates who may be hostile toward them. *See, Borzych v. Frank*, 2005 WL 2206785, *7 (W.D. Wis. 2005) (discussing WSPF inmate's request for literature evincing anti-Semitic views and advocating or justifying violence to advance those views). The display of religious emblems, garments or other religious identifiers, also imposes on their rights to be free of religion, especially considering the close proximity to which inmates are required to be housed, dine and recreate.  Inmates that may become a target as a result of expressed religious beliefs may require staff intervention, which creates a risk for harm to staff and inmates (DFOF ¶ 58).

Reducing gang activities, the flow of contraband, and religiously-motivated violence in a prison is certainly a compelling state interest, and prison official should be afforded deference as to how best to advance these interests.  *See, Cutter,* 544 U.S at 725, n.13.  The restrictions on the wearing of religious headgear affect much more than Jones-El. Any decision overruling this restriction would have a broad and substantial impact, since it would affect all the different kinds of religious headgear that WSPF must treat equally to the kufi (DFOF ¶ 75).  An exception cannot be made for Jones-El.  *Garrett v. Gilmore*, 926 F. Supp. 554, 557 (W.D. Va. 1996) (recognizing that allowing exceptions to prison regulation "easily" engenders jealousy among inmates).  DOC's policy still allows Jones-EL to possess and wear his kufi for most of the day— it just restricts that activity to his cell where the safety, security, and management concerns

expressed above are not as imminent.  The policy goes no further than necessary.  *See, Garner v. Livingston,* 2011 WL 2038581, *3 (S.D. Tex. 2011) (Texas policy restricting wearing of religious headgear to in cell and during religious services upheld under RLUIPA because it was "the least restrictive way of furthering" "the State's compelling interest in the safety and security of prisoners and prison staff"); *Davis v. Scott*, 1997 WL 34522671, *8 -9 (S.D. Tex. 1997) (restrictions on wearing yarmulke only in cell and at religious services found to be least restrictive means of fulfilling compelling state interests); *Horacek v. Wilson*, 2009 WL 861248, *4-5 (E.D. Mich. 2009) (upholding policy restricting wearing of religious headgear outside of cell under both First Amendment and RLUIUPA); *Jihad v. Fabian*, 2011 WL 1641885, *17-18 (D. Minn. 2011) (same).

The law is not on Jones-El's side. Courts have repeatedly upheld similar restrictions on religious headgear. *See Young v. Lane,* 922 F.2d 370, 375-77 (7th Cir. 1991) (holding that prison's concern that yarmulkes could be used by gangs as form of identification justified prohibition against wearing yarmulkes except in cells and during religious services); *Benjamin v. Coughlin,* 905 F.2d 571, 578-79 (2d Cir. 1990) (prohibition on wearing Rastafarian crowns justified by "security concerns over concealing" weapons and contraband); *Rogers v. Scurr,* 676 F.2d 1211, 1216 (8th Cir. 1983) (upholding prohibition on wearing prayer caps and robes outside of religious services); *Muhammad v. Lynaugh,* 966 F.2d 901, 902-03 (5th Cir. 1992) (upholding regulation restricting Muslim inmates' wearing of Kufi caps); *Standing Deer v. Carlson,* 831 F.2d 1525, 1528 (9th Cir. 1987) (court upheld a "no-headwear" policy in a dining area of a prison, finding it reasonably related to cleanliness, security and safety); *Butler-Bey v. Frey,* 811 F.2d 449, 451 (8th Cir. 1987) (upholding prohibition on the wearing of fezes in prison where prison officials showed that the fezes could be used for smuggling contraband); *St. Claire v.*

*Cuyler,* 634 F.2d 109, 114 (3rd Cir. 1980) (religious head covering prohibition appropriate where head gear could be used for identification with disruptive elements of prison population); *Sutton v. Stewart,* 22 F.Supp.2d 1097, 1102-03 (D. Ariz. 1998) (upholding reasonable restrictions on prisoner's wearing of kufis); *Sledge v. Cummings,* 995 F. Supp. 1276, 1281 (D. Kan. 1998) (upholding reasonable restrictions on prisoner's wearing of kufis).

Jones-El argues that WSPF policy does not survive scrutiny under RLUIPA because the institution allows inmates to wear other forms of standardized headgear outside of their cells (DFOF ¶ 52).  These include stocking hats, baseball caps, crusher khaki caps, and sweatbands from approved vendors in basic neutral colors, such as gray, white and green (*id.*). The colors of these items are consistent with the colors of allowable clothing items within the property policy (*id.*). These types of hats are available to inmates for purposes of outdoor protection from the sun, for warmth in the winter, and for sanitation purposes (DFOF ¶ 53).

The court in *Young* found this same argument unconvincing.  It explained that these types of hats are uniform to all inmates, and "[b]ecause a nonuniform headgear would limit the effectiveness of defendants' attempt to limit the existence of gangs, the Jewish inmates' right to wear yarmulkes [outside their cells and chapel] comes at a cost of less liberty and safety for the entire [prison] community, both inmates and guards. *Young,* 922 F.2d at 375-77.  The same reasoning applies to WSPF's permitted use of standardized caps and hats.  They do not create the same sort of security threat as religious headgear because they are available to, and worn by the entire inmate population, versus just a small group of inmates who are a part of a specific URG (DFOF ¶ 54). Because these types of approved secular headwear are available to all inmates, they are not unique to any one group of inmates and not as attractive to gangs to use as an

identifier (DFOF ¶ 55). Inmates are also not as sensitive to searches of non-religious hats and headbands (DFOF ¶ 56).

Security is the central correctional goal. *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989). Promoting a secure and safe prison environment is a compelling interest, s*ee Bell v. Wolfish*, 441 U.S. 520, 546, (1979), as is maintaining order within available prison resources. *Schlemm v. Frank*, 2014 WL 2591879, *13 (W.D. Wis.  2014) ("Equitable allocation of scarce financial resources is a compelling governmental interest."); *Jenkins v. Angelone*, 948 F. Supp. 543, 548 (E.D. Va. 1996) (noting that correctional officials have compelling interests in maintaining the security of the facility, managing budgetary constraints, and deflecting administrative difficulties). Restricting the wearing of religious headgear to the cells and chapel is the least restrictive means of advancing these compelling interests (DFOF ¶¶ 37-64, 75-77).  So WSPF's policy withstands scrutiny under RLUIPA.

## II.     WSPF'S POLICY PROHIBITING INMATES FROM WEARING RELIGIOUS HEADGEAR OUTSIDE THEIR CELL AND CHAPEL WITHSTANDS SCRUTINY UNDER THE FIRST AMENDMENT FREE EXERCISE CLAUSE.

### A.     Overview of the law.

Like RLUIPA, the free exercise clause of the First Amendment, guarantees every individual the right to freely exercise his or her religion and "requires government respect for, and noninterference with, [ ] religious beliefs and practices." *Cutter v. Wilkinson,* 544 U.S. 709, 719 (2005). To prevail on a free exercise claim, Jones-El must meet two requirements.

First, just as with his RLUIPA claim, Jones-El must show that the government has placed a substantial burden on a central religious practice. *Id.; Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005). Second, Jones-El must demonstrate that the government has intentionally

targeted a particular religion or religious practice. *Sasnett v. Sullivan,* 91 F.3d 1018, 1020 (7th Cir.1996), *vacated on other grounds,* 521 U.S. 1114 (1997).

In the prison setting, and under First Amendment scrutiny, an inmate's ability to practice his religion may be circumscribed by restrictions that are reasonably related to legitimate penological interests. *Conyers v. Abitz,* 416 F.3d 580, 585 (7th Cir. 2005); *Tarpley v. Allen County, Indiana,* 312 F.3d 895, 898 (7th Cir. 2002). In determining whether government conduct is reasonably related to a legitimate penological interest, the court considers four factors: (1) whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule; (2) whether there are alternative means of exercising the right in question that remain available to prisoners; (3) whether accommodation of the asserted constitutional right would have a negative impact on guards, other inmates and the allocation of prison resources; and (4) whether obvious, easy alternatives exist as evidence that the regulation is not reasonable. *Tarpley,* 312 F.3d at 898 (citing *Turner v. Safley,* 482 U.S. 78, 89–91 (1987)).

### B. There is no evidence to support that the defendants imposed a substantial burden on Jones-El's religious practice.

The Seventh Circuit has reaffirmed the application of the substantial burden test to inmate First Amendment claims such as Jones-El's. *See, Kaufman v. Pugh*, 2013 WL 4256968, *3, *5 (7th Cir. Aug. 16, 2013) (affirming dismissal of atheist inmate's First Amendment free exercise claims because he "did not show that the [restrictions] would impose a substantial burden on his practice of atheism."). So the substantial burden test remains an element that must be proven by inmate plaintiffs to substantiate both a First Amendment free exercise claim and a claim under RLUIPA. *Id.*; *Kaufman*, 419 F.3d at 683; *Hernandez,* 490 U.S. at 699; 42 U.S.C. § 2000cc-1(b)1. For the same reasons advanced above in Argument I(B)—including all of the

other opportunities he has to exercise his Islamic faith—Jones-El is unable to sustain this burden. On this basis, alone, summary judgment is proper.

### C.  WSPF's policy prohibiting inmates from wearing religious headgear outside their cell and chapel survives First Amendment scrutiny.

The protections offered by the First Amendment are more limited than those extended under RLUIPA. So any claim that fails under RLUIPA will fail inevitably under the First Amendment's more deferential standard. *Mark v. Gustafson*, 482 F. Supp. 2d 1084, 1090 (W.D. Wis. 2006). *Perez v. Frank*, 433 F. Supp. 2d 955, 964 (W.D. Wis. 2006). In this case, because WSPF's policy limiting religious headgear to cells and the chapel survives scrutiny under RLUIPA (*see,* Argument I(C), *supra*), the defendants have necessarily met the less stringent burden of showing that the practice is reasonably related to a legitimate penological interest under the First Amendment. *Borzych,* 439 F.3d at 390 (declining to consider a prisoner's constitutional claims, and considering solely his RLUIPA claim after noting the heightened protections it offers). The *Koger* court also found that a separate First Amendment analysis was unnecessary where the RLUIPA analysis effectively resolved the issues, noting:

> we call to mind the principle that "federal courts are supposed to do what they can to avoid making constitutional decisions, and strive doubly to avoid making unnecessary constitutional decisions." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP,* 256 F.3d 548, 552 (7th Cir. 2001).

*Koger*, 523 F.3d at 801. Because Jones-El's RLUIPA claim fails on its merit (*see,* Argument I(C), *supra*), his First Amendment free exercise claim also must fail.

### D.  Defendants West and Raemisch lack the requisite personal involvement.

There is no supervisory liability in a § 1983 action—to be held individually liable, a defendant must be personally responsible for the deprivation of a constitutional right. *Sanville v.*

*McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). A civil rights action against state officials under 42 U.S.C. § 1983 is "a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik–Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)); *see also Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). Typically, an official who rules "against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) (emphasis added). In other words, the official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye...." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citations omitted).

In this case, there is no dispute that defendants West and Raemisch have had no personal involvement in denying Jones-El any request to wear his kufi WSPF (DFOF ¶ 78). Such requests were never before them, and they are named because of their supervisory roles only.  So no claim against them can proceed under § 1983.  *Palmer v. Marion Cnty.,* 327 F.3d 588, 594 (7th Cir. 2003) ("§ 1983 does not allow actions against individuals merely for their supervisory role of others").[3]

---

[3] It should also be noted that neither West nor Raemisch have any current position of authority over Jones-El for purposes of any claim for injunctive relief (*see,* DFOF ¶¶ 2, 3).

### III. WSPF'S POLICY PROHIBITING INMATES FROM WEARING RELIGIOUS HEADGEAR OUTSIDE THEIR CELL AND CHAPEL WITHSTANDS SCRUTINY UNDER THE ESTABLISHMENT CLAUSE AND EQUAL PROTECTION CLAUSE.

#### A. Overview of the law; the establishment clause and equal protection clause.

With respect to discrimination claims based on religion, the analysis is the same whether the claim is viewed under the establishment clause or the equal protection clause. *Board of Education of Kiryas Joel Village School Dist. v. Grumet,* 512 U.S. 687, 715 (O'Connor, J., concurring) ("[T]he Religion Clauses ... and the Equal Protection Clause as applied to religion-all speak with one voice on this point."). The question is whether defendants were singling out particular religions for special treatment without a secular reason for doing so. *Cruz v. Beto,* 405 U.S. 319 (1972); *Kaufman v. McCaughtry,* 419 F.3d 678, 683-84 (7th Cir. 2005). The establishment clause of the First Amendment "commands a separation of church and state," *Cutter,* 544 U.S. at 710, by preventing the government from promoting any religious doctrine or organization or affiliating itself with one. *County of Allegheny v. American Civil Liberties Union,* 492 U.S. 573, 590 (1989). A governmental policy violates the establishment clause if "(1) it has no secular purpose, (2) its primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement with religion." *Kaufman,* 419 F.3d at 683 (citing *Lemon v. Kurtzman,* 403 U.S. 602, 612-13 (1971)); *Books v. City of Elkhart,* 235 F.3d 292, 301 (7th Cir.2000). Under the equal protection clause of the Fourteenth Amendment, plaintiff must establish that a state actor both treated him differently from other similarly situated individuals and did so purposefully. *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000).

### B. WSPF's policy does not single out particular religions for special treatment without a secular reason.

Jones-El asserts that WSPF's policy of restricting religious headgear to in-cell and chapel is a form of religious discrimination. However, as explained in Argument I(C), *supra*, there is a compelling *secular* reason justifying this distinction—prison gangs, unique identifies, and inmate sensitivities that provoke dangerous situations (*see generally,* DFOF ¶¶ 37-64, 75-77). The only evidence offered by Jones-El is that inmates may wear state-issued standardized hats in these areas of the prison. But these facts simply do not address WSPF's compelling *secular* interest in preventing violent acts toward identifiable religious groups, removing unique identifiers for gangs, or the cumulative effect of allowing the display of *all* types of religious headgear and/or emblems would have throughout the institution (*id.*). WSPF cannot discriminate against other religions who equally adopt identifying headgear or other forms of visible expression in their religious practices, and allowing Jones-El to wear a kufi would open the doors to all other outward forms of religious expression (*see,* DFOF ¶ 75).

There is no dispute that WSPF's policy on religious headgear applies equally to all religious groups. There is also a secular justification for policy. So there is no basis to support either an equal protection or establishment clause claim, and summary judgment must be granted.

## IV.   THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON JONES-EL'S CLAIM FOR COMPENSATORY AND PUNITIVE DAMAGES.

### A.   The plaintiffs cannot recover compensatory or presumed damages under § 1997e(e).

In his complaint, Jones-El requests compensatory, presumed, and punitive damages (Complaint, Dkt. #2, p. 25). However, § 803(d) of the PLRA, codified as 42 U.S.C. § 1997e(e), entitled "Limitation on Recovery," provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

In this case, Jones-El fails to allege any physical injury caused by the restriction on his kufi. Hence, Jones-El is not entitled to compensatory damages. *Meyers v. Teslik*, 411 F. Supp. 2d 983, 991 (W.D. Wis. 2006); *see also, Geiger v. Jowers*, 404 F.3d 371, 374-375 (5th Cir. 2005) (applying § 1997e(e)'s bar to inmate's claim for compensatory damages for emotional or mental injuries allegedly suffered as a result of purported First Amendment violation."); *Searles v. Van Bebber,* 251 F.3d 869, 876 (10th Cir. 2001) (explaining that the plain language of § 1997e(e) "does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted," and applying this bar to inmate's claim that prison chaplain violated his First Amendment right to free exercise of religion by denying him approval for kosher diet).

Jones-El's request for presumed damages is similarly barred. "When a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish, some form of presumed damages may possibly be appropriate." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310–11 (1986). Presumed damages are designed to "roughly approximate the harm that the plaintiff suffered and thereby compensate for harms that may be impossible to measure." *Id.* at 311; *see also id.* at n. 11 (citing voting rights cases where presumed damages were awarded

for nonmonetary harms that could not easily be quantified). They are a form of compensatory damages. *Hessel v. O'Hearn*, 977 F.2d 299, 301 (7ᵗʰ Cir. 1992). Thus, even assuming arguendo that presumed damages are available for Jones-El's constitutional claims*, but see Spence v. Board of Educ.*, 806 F.2d 1198, 1200 (3d Cir. 1986) (no presumed damages for violations of First Amendment free speech and free association rights), that claim would still be for mental or emotional injury suffered under the facts as alleged in this case and would be barred by § 1997e(e) absent a showing of prior physical injury. *Allah v. Al-Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000).

### B.    Jones-El fails to produce sufficient evidence to support any requested punitive damages.

Although § 1997e(e) bars recovery of compensatory damages for the plaintiffs, the statute is inapplicable to awards of nominal or punitive damages for violations of the right itself. *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003); *Meyers*, 411 F. Supp. 2d at 991; *Koutnik v. Berge*, 2004 WL 1960214, *1 (W.D. Wis. 2004); *Allah,* 226 F.3d at 251. "[N]ominal damages, of which $1 is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury." *Kyle v. Patterson,* 196 F.3d 695, 697 (7th Cir. 1999). Thus, the limitations set forth in § 1997e(e) bar the plaintiffs from recovering anything but nominal damages and any punitive damages he can prove.

Punitive damages are permitted when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others—this threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness. *Smith v. Wade*, 461 U.S. 30, 56 (1983). The Seventh Circuit explained:

> The difference between deliberate and reckless harm is the difference between wanting to hurt someone and knowing that hurting someone is a highly likely consequence of an act undertaken for a different end. But in the latter case there must be knowledge of the danger that the defendant's act creates, which in this case is a danger of depriving a public employee of her freedom of speech; and the knowledge of this danger presupposes some knowledge of the free-speech rights of public employees.

*Soderbeck v. Burnett County, Wis.*, 752 F.2d 285, 290 (7th Cir. 1985). Later on, however, the court said of the required knowledge: "We may therefore set it down as a condition of awarding punitive damages that the defendant almost certainly knew that what he was doing was wrongful and subject to punishment." *Id*. at 291. In *Wallace v. Mulholland*, 957 F.2d 333 (7th Cir. 1992), the court further clarified that "jury awards of punitive damages for unconstitutional force . . . and arrest without probable cause . . . must be supported by a finding that the officers acted with the intent to harm." *Id*. at 337 (footnote omitted).

There is no evidence in the record to support that any of the defendants were motivated by any intent to harm Jones-El. The record supports at all times the defendants were, in good faith, applying reasonable established policies and procedures. Jones-El is provided many alternatives to practice his religious exercise and wear his kufi. Certainly this does not evidence an evil motive or intent. Jones-El simply cannot produce sufficient evidence to support any award of punitive damages against any of these defendants. Therefore, summary judgment on the plaintiff's request for punitive damages is appropriate. *See, Trotter v. B & W Cartage Co., Inc.,* 2006 WL 1004882, *1 (S.D. Ill. 2006) (A motion for summary judgment may be rendered as to the issue of the availability of punitive damages); *Boles v. Neet*, 402 F. Supp. 2d 1237, 1245 (D. Colo. 2005) (summary judgment granted on the issue of punitive damages where no support that defendant acted with an evil motive or callous disregard of plaintiff's First Amendment rights).

**V.   THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

Even if the court declines to grant summary judgment and/or dismissal on the basis of the undisputed facts presented above, the defendants are entitled to summary judgment on Jones-El's constitutional claims because they are immune from suit for any money damages under the doctrine of qualified immunity.

**A.   Overview of the law.**

Qualified immunity protects government officials from facing suits for damages when their actions do not violate clearly established constitutional or statutory rights. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Once a defendant asserts a qualified-immunity defense, the plaintiff has the burden to establish that the defendant's action violated a clearly established right. *See Estate of Escobedo v. Bender,* 600 F.3d 770, 779 (7th Cir. 2010). To be clearly established, a right "must be sufficiently clear that ***every*** reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* ⸺ U.S. ⸺, 132 S. Ct. 2088, 2093 (2012) (internal quotations and brackets omitted) (emphasis added). This is a high bar. *Kramer v. Pollard,* 497 F. Appx. 639, 642 (7th Cir. 2012) (unpublished).  To defeat a qualified-immunity defense, a plaintiff need not point to a case that is factually identical to the present suit, but "existing precedent must have placed the statutory or constitutional question ***beyond debate***." *Ashcroft v. al-Kidd,* ⸺ U.S. ⸺, 131 S. Ct. 2074, 2083 (2011) (emphasis added). Courts may decide qualified-immunity cases on the ground that a defendant's action did not violate a clearly established right without reaching the question of whether a constitutional right was violated at all. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

### B.   No clearly established constitutional rights to wear religious headgear outside of cells and chapel.

Even if this Court concludes that WSPF's limits on the display of religious headgear violates the First Amendment and/or equal protection clause, the defendants are entitled to qualified immunity because such violations were not clearly established.   In order to defeat qualified immunity, the plaintiffs must cite cases establishing that these issue are "beyond debate." *al-Kidd,* 131 S. Ct. at 2083.   Jones-El cannot sustain this burden.   There simply are no analogous cases that would give notice that under the First and Fourteenth Amendments, an institution cannot restrict the wearing of religious headgear to cells and chapel.   But several cases cited in Arguments I, *supra,* hold otherwise and reaffirm the institution's need for the policy on religious headgear to maintain an acceptable level of safety and security.   As a result, the defendants are entitled to qualified immunity from any money damages.

### CONCLUSION

The defendants respectfully request that their motion for summary judgment be GRANTED and that judgment be entered on their behalf.

Dated at Madison, Wisconsin, this 17th day of October, 2014.

Respectfully submitted,

J.B. VAN HOLLEN
Attorney General

S/ JODY J. SCHMELZER
Assistant Attorney General
State Bar No. 1027796
Attorneys for Defendant
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-3094
(608) 267-8906 (Fax)
E-Mail:  schmelzerjj@doj.state.wi.us