IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MUSTAFA-EL K.A. AJALA,
formerly known as Dennis E. Jones-El,

             Plaintiff,

     v.

KELLI WEST, RICK RAEMISCH,
TODD OVERBO, PETER HUIBREGTSE
and GARY BOUGHTON,

             Defendants.

OPINION and ORDER

13-cv-546-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The question in this case is the extent to which plaintiff Mustafa-El K.A. Ajala, a Muslim prisoner at the Wisconsin Secure Program Facility, has the right to wear a kufi, which is a head covering worn by some Muslims.  The policy at the facility is that a prisoner may not wear religious headgear unless he is in his cell or participating in congregate services. DAI Policy #309.61.02, dkt. #14.  Plaintiff contends that the policy violates his rights under the Religious Land Use and Institutionalized Persons Act, the free exercise clause, the establishment clause and the equal protection clause.  Defendants Kelli West, Rick Raemisch, Todd Overbo, Peter Huibregtse and Gary Boughton (all of whom are prison officials in the Wisconsin Department of Corrections) have filed a motion for summary judgment, dkt. #11, and the parties have filed supplemental materials, as requested by the

court, so defendants' summary judgment motion is now ready for review.

Having reviewed the parties' materials, I conclude that defendants have not shown as a matter of law that banning plaintiff from wearing a kufi outside his cell and group worship is the least restrictive means of furthering a compelling government interest, which is the standard under RLUIPA.  However, because the Court of Appeals for the Seventh Circuit has rejected constitutional challenges to similar restrictions in the past, plaintiff cannot show that defendants violated clearly established law, which means that plaintiff is not entitled to money damages.  The case will proceed to a court trial to determine whether plaintiff is entitled to injunctive and declaratory relief.

OPINION

A.  Plaintiff's Motion for an Extension of Time

In an order dated March 3, 2015, I discussed plaintiff's practice of seeking extensions of time on the majority of deadlines he has faced in this case as well as other cases that he has filed in this court.  Dkt. #43.  Plaintiff had filed so many requests for extensions that they were becoming a burden on Magistrate Judge Stephen Crocker, the clerk of court and defendants.  As a result, I instructed plaintiff that the court would no longer grant an extension of time in the absence of a persuasive showing of good cause and that good cause would not include issues that plaintiff could have avoided with better time management.  In addition, I instructed plaintiff that he could not wait until the last minute to seek more time.  Rather, if plaintiff had not received a decision from the court by the day his materials were

due, then he should assume that his motion would not been granted and he should submit what he has completed as of that date rather than filing nothing on the assumption that the court will grant his request on some later date.

Despite these instructions, on the very next deadline that plaintiff received (a response to defendants' supplemental summary judgment materials), plaintiff filed another last-minute request for an extension of time, which the court did not receive until after the deadline already had passed. Dkt. #47. Although plaintiff had almost a month to file his response, he says he needed additional time because the law library was closed for "almost ten days." Id. However, plaintiff does not explain why he did not seek an extension earlier and he does not explain why he needed additional library time to prepare his response. Although he cited a number of cases in his response, most of them related to the general question whether prisoners have a right to wear religious headgear, so plaintiff could have included those cases in one of his earlier briefs.

Accordingly, I conclude that plaintiff has not shown good cause for filing a late response and I decline to consider his late filings. However, this decision does not prejudice plaintiff because I conclude that plaintiffs' claim survives defendants' motion for summary judgment in most respects even without considering plaintiff's untimely filing.

B.  Scope of Review

Although the parties argue generally about whether defendants may ban all prisoners from wearing any kind of religious headgear throughout the prison, the question raised by

plaintiff's claim is narrower than that. A kufi is the only type of religious headgear that plaintiff has requested to wear, so the only question in this case is whether plaintiff is entitled to wear a kufi when he is outside his cell. (Prisoners are allowed to wear religious headgear during group religious services as well as in their cell, but plaintiff is not allowed to attend group services because he is housed in segregation. Dfts.' PFOF ¶ 36, dkt. #27; Dfts.' Add. PFOF ¶ 84, dkt. #33.) Because this case is not proceeding as a class action, plaintiff does not have standing to challenge defendants' policies as they might apply to a different prisoner who wishes to wear different headgear.

Further, it is unnecessary to consider the validity of rules against wearing religious headgear in contexts that do not apply to plaintiff. For example, defendants do not allow prisoners to wear head coverings during contact visits, Dfts.' PFOF ¶ 59, dkt. #27, but plaintiff is in segregation, so he does not have contact visits. Plt.'s Aff. ¶ 10, dkt. #25; Dfts.' Rep. to Plt.'s Resp. to Dfts.' PFOF ¶ 59, dkt. #27. Defendants say that "it is likely that [plaintiff] will remain in administrative confinement . . . for the foreseeable future," Dfts.' PFOF ¶ 166, dkt. #33, and plaintiff does not cite any contrary evidence, so it would be premature to consider issues that will not arise until plaintiff is in general population. Clapper v. Amnesty International USA, 133 S. Ct. 1138, 1147 (2013) ("[W]e have repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact and that allegations of possible future injury are not sufficient [to demonstrate standing.]") (internal quotations and alterations omitted).

C.  RLUIPA

Under RLUIPA,

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.

In applying this statute, courts have placed the initial burden on the plaintiff to show that he has a sincere religious belief and that his religious exercise was substantially burdened.  Holt v. Hobbs, 135 S. Ct. 853, 862 (2015);  Koger v. Bryan, 523 F.3d 789, 797-98 (7th Cir. 2008); Vision Church v. Village of Long Grove, 468 F.3d 975, 996-97 (7th Cir. 2006).  If the plaintiff makes his required showing, the burden shifts to the defendants to demonstrate that their actions further "a compelling governmental interest," and do so by "the least restrictive means."  Cutter v. Wilkinson, 544 U.S. 709, 712 (2005).  If a plaintiff prevails on a RLUIPA claim, he is limited to declaratory and injunctive relief; he cannot obtain money damages.  Grayson v. Schuler, 666 F.3d 450, 451 (7th Cir. 2012).

For the purpose of their motion for summary judgment, defendants do not deny that plaintiff's religious beliefs are sincere or that the Wisconsin Secure Program Facility receives federal funding.  Instead, they argue that plaintiff has not shown his religious exercise was substantially burdened and that they have shown that the rule against wearing  religious

headgear outside a prisoner's cell or group services is the least restrictive means of furthering a compelling government interest.

1. Substantial burden

Defendants argue that plaintiff's religious exercise is not substantially burdened because plaintiff is permitted to wear his kufi while he is in his cell, which they say is "almost the entire time," Dfts.' Br., dkt. #12, at 5, though they do not say how often plaintiff is out of his cell. In addition, defendants list a number of ways that plaintiff can practice his religion besides wearing his kufi, such as reading books and observing a religious diet.

Defendants are not entitled to summary judgment on this issue. Plaintiff says that part of his religious belief is to wear a kufi "at all times" as "a reminder" of "a spiritual state" and his "Islamic identity." Plt.'s Aff. ¶¶ 4-5, dkt. #25. Although it is not clear how much time plaintiff spends in his cell, defendants admit that it is not *all* the time. Dfts.' Add. PFOF ¶ 101, dkt. #33 (prisoners in segregation "get[] out of their cells for various reasons, including recreation, medical/clinical consults, visitation and court appearances"). If plaintiff's religious beliefs require him to wear his kufi "at all times," then a rule that allows plaintiff to wear his kufi "most of the time" imposes a substantial burden on his religious exercise because the rule requires him to "engage in conduct that seriously violates his religious beliefs." Holt, 135 S. Ct. at 862 (alterations omitted). See also Ali v. Stephens, Civil Action No. 9:09-CV-52, — F. Supp. 3d — , 2014 WL 5355529, at *7 (E.D. Tex. Sep. 26, 2014) (substantial burden imposed by rule prohibiting prisoners from wearing religious

headgear throughout prison); <u>Malik v. Ozmint</u>, No, 8:07-387-RBH-BHH, 2008 WL 701517, at \*11 (D.S.C. Feb, 13, 2008) (substantial burden imposed by rule prohibiting Muslim prisoner in segregation from wearing kufi one hour each day because prisoner testified that wearing kufi "at all times" was part of his faith); <u>Caruso v. Zenon</u>, No. 95-MK-1578(BNB), 2005 WL 5957978, at \*18 (D. Colo. July 25, 2005) (substantial burden imposed by rule prohibiting religious headgear outside cell and group worship).  The Supreme Court has rejected defendants' argument that there is no substantial burden if the prisoner retains other means of practicing his religion.  <u>Holt</u>, 135 S. Ct. at 862 ("RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . not whether the RLUIPA claimant is able to engage in other forms of religious exercise.").

### 2.  Least restrictive means to further a compelling interest

Defendants identify three reasons for prohibiting plaintiff and other prisoners from wearing religious headgear outside their cells and at group religious services: (1) religious headgear could be used as a gang identifier; (2) prisoners could hide contraband in religious headgear; and (3) wearing religious headgear around other prisoners could lead to conflicts.  Plaintiff does not deny that suppressing gang activity, reducing contraband and minimizing conflicts between prisoners are compelling government interests.  The question is whether banning plaintiff from wearing a kufi is the least restrictive means of furthering those interests.

Answering this question is complicated by the fact that plaintiff's claim arises in the prison context.  Generally, courts are required to defer to the reasoned judgment of prison officials. E.g., Beard v. Banks, 548 U.S. 521, 528 (2006).  RLUIPA may be unique among the federal statutes in the way that it requires a careful balancing of deference to prison officials with strict scrutiny by the courts.  On one hand, the standard Congress chose is "exceptionally demanding" on the government, Holt, 135 S. Ct. at 864, reflecting the view that "Congress enacted RLUIPA . . . in order to provide very broad protection for religious liberty."  Id. at 859.  On the other hand, the Supreme Court has held that, "in applying RLUIPA's statutory standard, courts should not blind themselves to the fact that the analysis is conducted in the prison setting."  Id. at  866.  In other words, courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter v. Wilkinson, 544 U.S. 709, 722-23 (2005).  Therefore, when reviewing restrictions on religious exercise in prison, courts must determine how to apply both of these competing considerations without giving too much or too little weight to one over the other.  Holt, 135 S. Ct. at 864 ("Prison officials are experts in running prisons and evaluating the likely effects of altering prison rules, and courts should respect that expertise.  But that respect does not justify the abdication of the responsibility, conferred by Congress, to apply RLUIPA's rigorous standard.").

a.  Kufis as potential gang identifier

Defendants say that kufis and any religious headgear give prisoners a way to "uniquely identify themselves" and "any uniqueness that occurs in the facility attracts attention on the part of gang members." Dfts.' Br., dkt. #12, at 7.  In other words, defendants are concerned that plaintiff could use a kufi as a gang symbol.  Caruso, 2005 WL 5957978, at *19 (noting argument that prison officials "need to prevent . . . unique identification of inmates" because "any uniqueness that occurs in the facility seems to attract attention on the part of our gang members," who "are constantly seeking some way to stand out in the population").

Plaintiff challenges defendants' asserted interest on multiple fronts.  First, he says that any concerns defendants have about headgear being used as a gang symbol are undermined by defendants' allowing prisoners to wear secular headgear such as baseball caps outside their cells and group religious services, even when the prisoner is housed in segregation. Plt.'s Aff. ¶¶ 6, 14 dkt. #25; Plt.'s Aff. ¶ 8, dkt. #42.  Because the secular caps can be worn in various ways and they are available in three colors, plaintiff says that the caps are more susceptible to be used as gang symbols.  Second, plaintiff says that a kufi could not be used as a gang symbol because prison rules require kufis to be solid black and unadorned with symbols, Plt.'s Aff. ¶ 16, dkt. #25, so the only message a kufi could communicate to another prisoner is that plaintiff is a Muslim.

In response, defendants acknowledge that some prisoners are allowed to wear secular headgear outside their cells and that secular hats are available in multiple colors.  Dfts.'

PFOF ¶ 27, dkt. #27.  However, defendants argue that the secular hats are different because they can be worn by any prisoner rather than a self-selected subgroup, which defendants believe could make religious headgear more susceptible to co-opting by gangs.  In addition, defendants say that even plain kufis could be used as a gang identifier because gang members could intimidate nongang members into not wearing a kufi.

I have accepted similar arguments in the past.  Levy v. Holinka, No. 09-cv-279-vis, 2010 WL 1373828, at *4 (W.D. Wis. Mar. 31, 2010) (rejecting RLUIPA challenge to restriction on wearing turbans, in part because turban could be used to represent gang affiliation); Charles v. Frank, No. 02-C-626-C, 2004 WL 420153, at *4 (W.D. Wis. Feb. 26, 2004) (rejecting  RLUIPA challenge to ban on wearing prayer beads that are visible outside clothes because of beads' potential use as gang symbol), aff'd, Charles v. Frank, 101 Fed. Appx. 634, 636-37 (7th Cir. 2004).  However, in a recent case, the Court of Appeals for the Seventh Circuit seemed skeptical of the argument that Wisconsin prisons need to limit religious headgear in order to combat gangs.  The court wrote that, "[b]ecause gang information may be widely available already, it is difficult to depict as 'compelling' a desire to cut out one potential means of identification."  Schlemm v. Wall, No. 14-2604, — F.3d —, 2015 WL 1787400, at *4 (7th Cir. Apr. 21, 2015).

The court did not go so far as to say that the state could not have a compelling interest in imposing religious headgear restrictions under any under circumstances.  And Schlemm is not on all fours with this case because the issue in Schlemm was whether a prisoner could wear multicolored religious headband during group worship, not throughout

10

the prison. However, <u>Schlemm</u> suggests that district courts must view restrictions on religious headgear with more skepticism. In this case, I am not persuaded that defendants have shown as a matter of law that prohibiting plaintiff from wearing a kufi is the least restrictive means of furthering an interest in suppressing gang activity.

The only "subgroup" associated with wearing a kufi is Islam, which of course is not a gang. Although defendants argue generally that there is much overlap between gangs and religious groups, Dfts.' PFOF ¶ 44, dkt. #27; Dfts.' Add. PFOF ¶ 134, dkt. #33, defendants do not identify any gang in Wisconsin or the country that includes Muslims only and defendants do not identify any gang that uses a kufi as a symbol or has ever done so. As plaintiff points out, a prisoner's ability to communicate any message with a kufi, other than "I am a Muslim," is limited because all kufis in the prison are solid black and cannot be adorned in any way. Defendants do not argue that black is a color used by gangs. In <u>Schlemm</u>, the court stated that, if religious headgear "is free of any gang significations[,] it is hard to see a 'compelling' need to prohibit its use." <u>Id.</u> at *4. <u>See also</u> <u>Aziyz v. Tremble</u>, 2008 WL 282738, at *10 (M.D. Ga. 2008) (noting prison's decision to address gang-related concerns by limiting kufis to one color); <u>Caruso</u>, 2005 WL 5957978, at *6-7 ("Although [prison officials] raised concern about kufis being used to demonstrate gang affiliation, the concern was alleviated by restricting inmates to wearing only white kufis."); <u>Luckette v. Lewis</u>, 883 F. Supp. 471, 482 (D. Ariz. 1995) (prison officials must allow prisoners to wear religious headgear, but officials may limit colors worn).

Alternatively, defendants argue that there is a risk in the future that a gang could

11

adopt the kufi as a gang symbol, Dfts.' PFOF ¶ 40, dkt. #27, but defendants identify no reason why prisoners could not do the same thing with secular hats.   Holt, 135 S. Ct. at 865-66 (if prison restriction is underinclusive, this undermines argument that restriction is least restrictive means to further compelling interest).   Further, if gang members were going to use kufis as a gang symbol and then force nongang members to refrain from wearing the kufi, gang members could be doing that already during group worship, but defendants do not suggest that that has been a problem.

Defendants argue that religious headgear worn by Muslims is potentially more problematic than headgear in other religions because some Muslims wear turbans rather than kufis, presenting another way that a prisoner could identify himself uniquely.   Again, defendants do not identify any reason to believe that a prisoner could use a turban effectively as a gang symbol.   Further, as discussed above, the sole issue in this case is whether plaintiff is entitled to wear a kufi.   There may be other reasons for restricting turbans (assuming that any prisoners wish to wear one).   Cf. Benjamin v. Coughlin, 905 F.2d 571, 578-79 (2nd Cir. 1990) ("[The] [p]rohibition on wearing Rastafarian crowns while allowing yarmulkes and kufis [is] justified by 'security concerns over concealing' weapons and contraband.").   Regardless, plaintiff is not requesting to wear a turban, so that issue is not before the court.   Cf. Schlemm, 2015 WL 1787400, *3 ("[T]he costs of accommodating other inmates' requests (should any be made) can be left to future litigation.").

In their supplemental materials, defendants say that there is a heightened risk with respect to plaintiff because he is housed in segregation and has a history of gang

involvement.  In addition, he received a conduct report in 1999 for attempting to disguise gang literature as a religious document, Dfts.' Add. PFOF ¶¶ 153-174, dkt. #33, so defendants say that plaintiff has shown that he is willing to use religion as a cloak for gang activity.

With respect to plaintiff's segregation status, this would seem to *limit* plaintiff's ability to use a kufi as a gang symbol because he comes into contact with fewer prisoners than someone in general population.  Further, plaintiff has cited evidence that even prisoners in segregation are allowed to wear secular headgear such as a baseball cap outside their cells, e.g., Plt.'s Aff. ¶ 8, dkt. #42, so that raises a genuine issue whether defendants are treating religious headgear the same way as secular headgear and, more important for plaintiff's RLUIPA claim, whether a segregation prisoner's wish to wear religious headgear outside his cell cannot be accommodated without jeopardizing security.

With respect to plaintiff's alleged gang involvement, I agree with defendants that plaintiff's disciplinary history provides support for a view that plaintiff presents a greater risk than many other prisoners of using religion as a disguise for gang activity.  For this reason, in another case, I upheld a restriction preventing plaintiff from participating in group worship.  Ajala v. Boughton, No. 13-cv-545-bbc (W.D. Wis. Apr. 22, 2015).  However, even if plaintiff is a gang member, defendants have not shown as a matter of law that plaintiff could use a plain kufi to communicate a gang-related message, even if he wanted to do so.  Accordingly, I conclude that defendants are not entitled to summary judgment on this issue.

b.  Kufis as a way to smuggle contraband

Defendants' second argument is that prisoners could use a kufi to hide contraband, an argument that at least one court has found to be persuasive under RLUIPA.  Garner v. Livingston, No. CA-C-06-218, 2011 WL 2038581, at *3 (S.D. Tex. May 19, 2011) (upholding rule banning wearing kufis during transit on ground that kufi has "potential for the concealment of a weapon or contraband").  Plaintiff argues that a kufi would not be effective for hiding contraband because "[k]ufi caps hug the skull, [are] a single layer of cloth, and can be seen through—thus a weapon or drugs under it would show."  Plt.'s Resp. to Dfts.' PFOF ¶ 50, dkt. #27.  Further, by allowing prisoners to wear secular hats, plaintiff says that defendants have undermined any argument that restricting the wearing of kufis is necessary to further an interest in eliminating contraband.  Plaintiff says that a less restrictive means of furthering that interest would be to include a search of the kufi as part of the search that he receives every time he leaves his cell.  Plt.'s Aff.  ¶ 9, dkt. #42.

Defendants do not respond to plaintiff's argument that kufis would not be an effective means for smuggling contraband, so that is reason enough to deny defendants' summary judgment motion on this issue.  With respect to the disparate treatment of secular and religious headgear, defendants say that it is justified because "some inmates become sensitive about staff touching and/or searching their religious property items, which would also create tension with staff and increase the risk of disturbance."  Dfts.' PFOF ¶ 56, dkt. #27.  See also Perez v. Frank, No. 04-C-1181, 2009 WL 606222, at *5-6 (E.D. Wis. Mar. 9, 2009) (discussing but not resolving similar objection to religious garments in prison).

14

However, one answer to that potential problem would be to require plaintiff to agree in advance to the search of his kufi; if he refuses to consent or later objects to a search, defendants might then be justified in prohibiting him from wearing his kufi outside his cell. Holt, 135 S. Ct. at 866-67 ("[A]n institution might be entitled to withdraw an accommodation if the claimant abuses the exemption in a manner that undermines the prison's compelling interests.").

In any event, defendants have not shown as a matter of law that searching the kufi is not a feasible way to address their concerns about contraband. Ali, 2014 WL 5355529, at *9 (restricting wearing of kufis not least restrictive means of reducing contraband because "the Kufi may be searched, just as any other item worn by an inmate"); Malik, 2008 WL 701517, at *12 (denying summary judgment on issue whether kufis are contraband risks because prison officials failed to show why kufis could not be searched like rest of prisoner's clothing); Muslim v. Frame, 891 F. Supp. 226, 233 (E.D. Pa. 1995) (same). Garner is not persuasive because the court did not explain why searching the kufi was not an adequate, less restrictive alternative.

Defendants also argue that searching kufis and other religious headgear "would be burdensome for prison staff," Dfts.' PFOF ¶ 51, dkt. #27, but they do not explain why it is more burdensome for religious headgear than it is for secular headgear and they do not respond to plaintiff's argument that he is already searched every time he leaves his cell. More generally, defendants have not made any effort to quantify the burden they believe the additional searches would impose, so I cannot say that have proven that they have a

15

compelling interest in avoiding those searches.  Cf. 42 U.S.C. § 2000cc-3 (RLUIPA "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise"); Schlemm, 2015 WL 1787400, at *3 ("Saving a few dollars is not a compelling interest.").  See also Ali, 2014 WL 5355529, at *10 (concluding that "the time required to search Kufis is minimal and would have little impact on prison operations").


c.  Kufi as conflict generator

Finally, defendants argue that, if prisoners are allowed to wear religious headgear around prisoners of other faiths, those other prisoners might be offended by the expression of religion, which could lead to harassment or even a physical altercation.  Dfts.' Br., dkt. #12, at 9.  It seems unlikely that defendants have a compelling interest in preventing other prisoners from being offended.  Even in the prison context, courts have been skeptical of the idea of a "heckler's veto."  O'Bryan v. Bureau of Prisons, 349 F.3d 399, 401 (7th Cir. 2003) ("[R]elying on other inmates' reactions to a religious practice is a form of hecklers' veto. The RFRA does not allow governments to defeat claims so easily.").

Of course, prison officials have a compelling interest in preventing prison violence.  However, by defendants' own assertion, plaintiff has little contact with other prisoners, so this justification seems weak with respect to someone like plaintiff who is in segregation.  Further, O'Bryan, 349 F.3d at 401, makes it clear that defendants "must demonstrate, and not just assert," that there is a real potential for violence.  In that case, prison officials argued

16

that a rule against Wiccan "spell-casting" was necessary because, "[i]f an inmate were to cast a spell on another inmate and the other inmate were to find out about it, a fight or other serious disruption could easily occur." The court refused to assume that fights would break out and remanded the case to allow the parties to develop the record. Id. at 402. Similarly, in this case, defendants have offered nothing but their own say so for believing that the mere sight of a kufi to non-Muslims would be so offensive as to cause a fight. Holt, 135 S. Ct. at 867 (Sotomayor, J., concurring) ("[T]he deference that must be extended to the experience and expertise of prison administrators does not extend so far that prison officials may declare a compelling governmental interest by fiat. Indeed, prison policies grounded on mere speculation are exactly the ones that motivated Congress to enact RLUIPA.") (internal quotations, citations and alterations omitted).

Plaintiff says that prisoners already know each other's religious affiliation and that each prisoner's religion is listed on the outside of his cell. Plt.'s Resp. to Dfts.' PFOF ¶ 57, dkt. #27. Defendants do not cite contrary evidence, but they say that plaintiff does not have foundation to make these allegations. I am overruling that objection. As a prisoner at the Wisconsin Secure Program Facility since 2007 (and a prisoner in the Wisconsin Department of Corrections even longer), plaintiff has foundation to testify regarding information that is common knowledge among prisoners. Certainly, plaintiff is competent to testify about what he has observed on the outside of his own and other prisoners' cells.

Alternatively, defendants argue in their supplemental materials that an awareness of a prisoner's religion "does not pose the same security risks as . . . outward identifiers of those

17

religions," Dfts.' Br., dkt. #46, at 2, but defendants do not cite any evidence to support that statement.   In their supplemental facts, defendants say that "open displays of religious headgear" may be "associated" with "[a]cts of retaliation or intimidation," Dfts. Add. PFOF ¶ 113, dkt. #33, but they do not provide the basis for that opinion or even explain what they mean by "retaliation" and "intimidation."

Further, defendants do not respond to plaintiff's argument that defendants' stated concern about conflicts between prisoners of different faiths is undermined by the fact that defendants allow prisoners to wear religious headgear in their cells even when the prisoner has a cell mate of a different faith.  Plt.'s Aff. ¶ 10, dkt. #42.  If defendants have not had problems with conflicts between prisoners who are forced to share a small space for many hours a day, then it is more difficult for defendants to argue that the mere sight of religious clothing when passing in the hall is likely to cause problems.

In sum, defendants have not shown as a matter of law that prohibiting plaintiff from wearing a kufi outside his cell is the least restrictive means of furthering any of the interests they have identified.  Accordingly, I am denying defendants' motion for summary judgment on plaintiff's RLUIPA claim.  Plaintiff did not file his own motion for summary judgment, so this claim must proceed to a trial before the court.  Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41 (1989) (right to jury trial does not apply to claims for equitable relief).

d.  Relevance of practices at other prisons

Plaintiff raises an issue that is relevant to all of defendants' asserted interests, which

is that the Federal Bureau of Prisons allows its prisoners to wear religious headgear throughout the prison.  Defendants object to the evidence plaintiff cites on the ground that it is outdated, but at least one court noted in a recent case that the bureau has not changed its rule on this issue.  Ali, 2014 WL 5355529, at *9.  The same court noted evidence that California allows its prisoners to wear religious headgear outside their cells and religious ceremonies.  Id.  See also Benning v. Georgia, 864 F. Supp. 2d 1358, 1361 (M.D. Ga. 2012) (noting settlement agreement in Georgia prisons "allowing . . . all . . . inmates . . . to wear religious head coverings at all times").  For their part, defendants cite an "informal survey" showing that at least 14 other states have a religious headgear policy similar to Wisconsin's.  Dfts.' Add. PFOF ¶ 175, dkt. #33.

The Supreme Court has stated that "the policies followed at other well-run institutions [are] relevant to a determination of the need for a particular type of restriction." Holt, 135 S. Ct. at 866 (quoting Procunier v. Martinez, 416 U.S. 396, 414, n. 14 (1974)). Although the Court has rejected the argument that "RLUIPA requires a prison to grant a particular religious exemption as soon as a few other jurisdictions do so," it has also stated that,  "when so many prisons offer an accommodation, a prison must, at a minimum, offer persuasive reasons why it believes that it must take a different course."  Id. at 866.

Because I am denying defendants' motion for summary judgment on other grounds, I need not decide in this order how much weight to give to the practices of other prisons. However, at trial, if plaintiff presents evidence that other prisons have more liberal policies regarding religious headgear and have not experienced problems, then defendants should be

prepared to explain why they believe the situation would be different in Wisconsin.

e.  Caruso v. Zenon

In the January 15, 2015 order asking for supplemental briefing, dkt. #29, I asked the parties to discuss Caruso v. Zenon, 2005 WL 5957978 (D. Colo. 2005), in which the court considered whether other types of headgear, such as a stocking cap, could serve a Muslim prisoner's religious desire to cover his head while also addressing the prison officials' concerns about using the kufi as a gang symbol and about the potential offense it could cause non-Muslim prisoners.  In their responses, both sides have rejected this suggestion, Dfts.' Br., dkt. #32, at 15-16; Plts.' Br., dkt. #41, at 5, so I have not considered it further.

f.  Cases cited by defendants

For the sake of completeness, I note that defendants cited several cases in which a court rejected a challenge under RLUIPA (or the Religious Freedom Restoration Act, which applies the same standard) to a rule restricting the wearing of religious headgear.  Jihad v. Fabian, No. CIV. 09-1604 SRN LIB, 2011 WL 1641885, at *18 (D. Minn. Feb. 17, 2011) (upholding ban on wearing kufi outside cell or prison chapel); Horacek v. Wilson, 2009 WL 861248, at *5 (E.D. Mich. 2009) (upholding ban on wearing yarmulke outside cell); Davis v. Scott, No. CIV.A. H-95-69, 1997 WL 34522671, at *9 (S.D. Tex. Mar. 31, 1997) (upholding ban on wearing yarmulke outside religious services).   I do not find these cases persuasive because the courts provided little reasoning to justify their conclusion and they

did not consider whether the government had submitted sufficient evidence to show as a matter of law that the restriction was the least restrictive means to satisfy the government's asserted interests.  In fact, in <u>Horacek</u>, the plaintiff raised claims under both RLUIPA and the First Amendment, but the court limited its analysis to the more deferential First Amendment standard.  <u>Horacek</u>, 2009 WL 861248, at *5 ("The magistrate judge concluded that the policy is rationally related to legitimate penological concerns. The Court agrees.").  In any event, I do not believe that analysis in these cases is consistent with the RLUIPA standard, as interpreted by the courts in <u>Holt</u> and <u>Schlemm</u>.

## D.  <u>Constitutional Claims</u>

In addition to his claim under RLUIPA, plaintiff brought claims under the free exercise clause, the establishment clause and the equal protection clause.  However, I have little difficulty in concluding that the law is *not* clearly established that plaintiff has a constitutional right to wear a kufi at all times, which means that defendants are entitled to qualified immunity.  <u>Carroll v. Carman</u>, 135 S. Ct. 348, 350 (2014) ("A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.").

In <u>Young v. Lane</u>, 922 F.2d 370, 374 (7th Cir. 1991), the court rejected a challenge under the free exercise clause to a prison rule limiting religious headgear to a prisoner's cell and during religious services, even though prisoners were allowed to wear baseball caps at all times and even though some of the baseball caps were different colors.  Other courts have

reached similar conclusions over the years.  E.g., Portley-El v. Zavaras, 188 F.3d 519, 1999 WL 542631, *2 (10th Cir. Jul. 27, 1999) (nonprecedential opinion) (rejecting First Amendment claim by prisoner who wanted to wear fez at prison job "[b]ecause such religious headgear may be used to conceal drugs, weapons, or other contraband, and may spark internal violence among prisoners"); Muhammad v. Lynaugh, 966 F.2d 901, 903 (5th Cir. 1992) ("By permitting inmates to wear Kufi caps and religious insignia in their cells and in religious services in the chapel, the TDJC has provided an opportunity for the exercise of religious freedoms as guaranteed by the Constitution. Allowing inmates to wear these religious articles in other areas conceivably could undermine the TDJC's legitimate penological interests, primarily its overriding concern for prison security."); Rogers v. Scurr, 676 F.2d 1211, 1216 (8th Cir. 1982) ("We find that no constitutional right of the prisoners was violated by the prohibition on wearing prayer caps and robes outside religious services."); St. Claire v. Cuyler, 634 F.2d 109, 116 (3d Cir. 1980) (upholding limitations on religious headgear).

Plaintiff attempts to distinguish Young on the ground that "the secular caps were all one color" in Young, Plt.'s Br., dkt. #21, at 9, but that is incorrect.  The court acknowledged that "not all of the baseball caps issued by defendants were of the same color."  Young, 922 F.2d at  376 n.18.  Further, even if Young could be distinguished on that ground, this would not show that the law is clearly established that the Constitution prohibits prison officials from prohibiting a Muslim prisoner from wearing a kufi outside his cell and at religious services.  Plaintiff does not cite any case law in which a court reached that conclusion.  In

his supplemental materials, plaintiff cites a number of cases in which courts ruled in favor of prisoners on First Amendment claims involving restrictions on religious headgear.  E.g., Boles v. Neet, 486 F.3d 1177, 1184 (10th Cir. 2007); Singh v. Goord, 520 F. Supp. 2d 487, 509 (S.D.N.Y. 2007); Ali v. Szabo, 81 F. Supp. 2d 447, 470 (S.D.N.Y. 2000).  However, in those cases, the court's rationale was that prison officials had failed to identify *any* penological interest in support of the restriction, which is not the situation in this case.

Although the plaintiff in Young did not bring a claim under the equal protection clause or the establishment clause, plaintiff does not cite any other authority showing that defendants should have known that they were violating his rights under either of those constitutional provisions.  Plaintiff's only argument in this case that was not raised in Young is that defendants are treating Native Americans more favorably than Muslims by allowing Native Americans to wear feathers on the recreation yard.  However, plaintiff acknowledges that the Native Americans are wearing the feathers as part of their sweat lodge ceremony, Plt.'s Aff. ¶ 2, dkt. #42, which takes place in the recreation yard because that is where the sweat lodge is located.  Because it is undisputed that adherents of other faiths are permitted to wear religious garments during congregate services, Dfts.' Add. PFOF ¶ 81, dkt. #33, defendants' treatment of the Native Americans does not show a preference for Native American beliefs over Islam, in violation of the establishment clause or the equal protection clause.  Goodvine v. Swiekatowski, No. 08–cv–702–bbc, 2010 WL 55848, *3 (W.D. Wis. Jan. 5, 2010) (general question under both equal protection clause and establishment clause is whether "the defendant [is] treating members of some religious faiths more favorably

23

without a secular reason for doing so").  Accordingly, I conclude that defendants are entitled to qualified immunity on all plaintiff's constitutional claims.

Qualified immunity does not apply to claims for declaratory or injunctive relief. Volkman v. Ryker, 736 F.3d 1084, 1091 (7th Cir. 2013).  However, because I have concluded that plaintiff may go forward on his request for injunctive and declaratory relief under RLUIPA and the standard under RLUIPA is stricter than the standard for plaintiff's constitutional claims, it is not necessary to decide whether plaintiff may be entitled to declaratory or injunctive relief under the free exercise clause, the establishment clause or the equal protection clause.  Schlemm, 2015 WL 1787400, at *1 ("Schlemm's arguments under the Constitution's First and Fifth Amendments (applied to the states by the Fourteenth) we bypass, because the Act provides greater protection.").

## E.  Proper Parties

Defendants argue that Kelli West (the Religious Practices Coordinator for the Wisconsin Department of Corrections) and Rick Raemisch (the former Secretary of the department) should be dismissed from the case because neither one of them has authority to grant plaintiff any injunctive or declaratory relief.   Williams v. Doyle, 494 F.Supp.2d 1019, 1024 (W.D. Wis. 2007) ("[A] claim for injunctive relief can stand only against someone who has the authority to grant it.").  Because Raemisch is no longer an employee of the department, I agree with defendants that Raemisch is no longer in a position to do anything to help plaintiff.  Plaintiff cites no evidence to the contrary.  However, defendants

do not cite any evidence to support their argument that West has no influence over the decision whether to allow plaintiff to wear a kufi, so I decline to dismiss her from the case at this time.

## F. Assistance in Recruting Counsel

In Schlemm, 2015 WL 1787400, at *4, the court of appeals asked the court to "seriously consider recruiting counsel to assist Schlemm" because "resolving his claims may require evidence that a prisoner will find it hard to obtain and present." Although plaintiff has shown in this case and others that he is an able litigator, because Schlemm involved issues similar to this case, I conclude that recruiting counsel is appropriate in this case as well, particularly because the resolution of plaintiff's claim could have implications for other prisoners and for prison policies. The case will be stayed while the court attempts to locate counsel to represent plaintiff.

ORDER

IT IS ORDERED that

1. The motion for an extension of time filed by plaintiff Mustafa-El K.A. Ajala, formerly known as Dennis Jones-El, dkt. #47, is DENIED.

2. The motion for summary judgment filed by defendants Kelli West, Rick Raemisch, Todd Overbo, Peter Huibregtse and Gary Boughton, dkt. #11, is GRANTED as to (1) plaintiff's claim against defendant Rick Raemisch; and (2) plaintiff's request for money

damages. Plaintiff's complaint is DISMISSED as to Raemisch.

    3.  Defendants' motion is DENIED in all other respects.

    4.  The case will be stayed pending recruitment of counsel for plaintiff.  If I find counsel willing to represent plaintiff, I will advise the parties of that fact. Soon thereafter, a status conference will be held to establish a new schedule for the resolution of the case.

    Entered this 4th day of May, 2015.

                          BY THE COURT:

                          /s/
                          BARBARA B. CRABB
                          District Judge